UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DONYALE KITCHENS AND QUINSHON SHINGLES,

                                        Plaintiffs,        COMPLAINT

      -against-                                            JURY DEMAND

THE CITY OF NEW YORK, DETECTIVE JOSEPH E.
PATTON (Shield #9866), POLICE OFFICER DAVID
GRIECO (Shield # 18061), and POLICE OFFICER(S)
JOHN DOE 1-3[1],
                                        Defendants.
------------------------------------------------------------------x

Plaintiffs DONYALE KITCHENS AND QUINSHON SHINGLES (hereinafter
"plaintiffs"), by their attorney(s) THE LAW OFFICES OF WALE MOSAKU, P.C.,
complaining of the defendants THE CITY OF NEW YORK, DETECTIVE JOSEPH E.
PATTON (Shield # 9866), POLICE OFFICER DAVID GRIECO (Shield # 18061) and
POLICE OFFICER(S) JOHN DOE 1-3 (collectively referred to as the Defendants),
alleges as follows:

NATURE OF THE ACTION

1.      This is an action at law to redress the deprivation of rights secured to
        the plaintiffs under color of statute, ordinance, regulation, custom,
        and/or to redress the deprivation of rights, privileges, and immunities
        secured to the plaintiffs by the Fourth, Fifth and Fourteenth
        Amendments to the Constitution of the United States, and by Title 42
        U.S.C. §§ 1982, 1983 and 1985, [and arising under the law and
        statutes of the State of New York].

JURISDICTION

2.      The jurisdiction of this Court is invoked under 28 U.S.C. §1343(3),
        this being an action authorized by law to redress the deprivation of
        rights secured under color of state and city law, statute, ordinance,

--------------------------------

[1] The above-referenced officers, whose identities are presently unknown, upon information and well-founded belief, were and are law enforcement officers employed by the New York City Police Department ("NYPD").

regulation, custom and usage of a right, privilege and immunity secured to the plaintiffs by the Fourteenth Amendment to the Constitution of the United States. Jurisdiction of this court exists pursuant to 42 USC §1983 and under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

3.      All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiffs' federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiffs' claims under applicable State and City laws.

4.      As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

THE PARTIES

5.      Plaintiff DONYALE KITCHENS is a resident of the County of Kings, City and State of New York. Plaintiff is an African American female of full age.

6.      Plaintiff QUINSHON SHINGLES is a resident of the County of Kings, City and State of New York. Plaintiff is an African American male of full age.

7.      At all relevant times DETECTIVE JOSEPH E. PATTON (Shield # 9866), POLICE OFFICER DAVID GRIECO (Shield # 18061) and POLICE OFFICER(S) JOHN DOE 1-3 (hereinafter "defendant officers") were, and upon information and belief, still are, law enforcement officers employed by the NYPD.

8.      At all times herein, defendant officers were employed as law enforcement officers of the City of New York, State of New York, and was acting under the color of their official capacity and their acts

as alleged herein, were performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were the servants, agents, and employees of their co-defendant, the City of New York, so that their acts are imputed to the City of New York and its Police Department, the NYPD.

9.    At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, through the NYPD, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

10.    Plaintiffs sue all defendants in their individual and official capacities.

<u>FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

11.    On or about December 4, 2011, at approximately 08:00 am., within the premises known as 765 Lincoln Avenue, #6F, Brooklyn, New York 11208 (hereinafter "subject premises"), the defendant officers unlawfully and illegally entered into the subject premises, without the plaintiff Donyale Kitchens' permission, and despite being explicitly informed by the plaintiff Donyale Kitchens that they did not have permission to enter into the subject premises.

12.    That prior to the time of the incident, there had been a shooting incident at another residence within the vicinity of the subject premises. That the plaintiff Donyale Kitchens' son, namely Tyriek Fortune was a friend of Christopher Newman, whose residence had been shot at in the above-referenced incident.

13.    That following the shooting incident, Christopher Newman, who was nervous about remaining within said premises, had gone to the plaintiff Donyale Kitchens' subject premises to stay for a while.

14.    That upon information and well founded belief, the defendant officers came to learn that Christopher Newman was within the subject premises.

15.     That the defendant officers thereafter went to the subject premises, and attempted to gain entry into the subject premises.

16.     That the plaintiff Donyale Kitchens' son, namely Tyriek Fortune, who was within the subject premises at the time, along with Christopher Newman, and the plaintiff Quinshon Shingles (who is the plaintiff Donyale Kitchens nephew), telephoned the plaintiff Donyale Kitchens to inform her that the defendant officers were at her door demanding entry into the subject premises.

17.     That the plaintiff Donyale Kitchens, who at the time was at her sister's apartment that was also located within the same building that the subject premises is located, went to the subject premises to ascertain why the defendant officers were attempting to gain entry to her residence.

18.     That upon arrival at her front door, the plaintiff observed the Head of Security, and the Superintendent of the building within which she resided, as well as the defendant officers, who were all dressed in plain clothes.

19.     That the defendant officers identified themselves as police officers.

20.     That the plaintiff Donyale Kitchens was told by the defendant officers that they wanted to speak with her son, namely Tyriek Fortune, in regards to a complaint that was filed against him approximately one week prior to the incident, and demanded entry into the subject premises.

21.     That the plaintiff Donyale Kitchens asked the defendant officers if they had an arrest warrant for Tyriek Fortune, or a search warrant that permitted them entry into the subject premises.

22.     That the defendant officers responded that they did not have any applicable warrant, but that they could obtain one.

23.     That the plaintiff Donyale Kitchens informed the defendant officers that she was refusing them entry into her apartment if they did not

have a warrant, but that when they obtained a warrant, they could
return and she would permit them entry into the subject premises.

24.    That the plaintiff Donyale Kitchens also offered to take her son
Tyriek Fortune to the precinct at a later occasion, if they indeed
wanted to question him about an earlier incident.

25.    That the defendant officers then threatened to gain entry into the
subject premises by force.

26.    That having told the defendant officers what to do in order to gain
entry into her apartment, the plaintiff Donyale Kitchens decided not
to continue to discuss the matter with the defendant officers, and
returned to her sister's apartment.

27.    That the Head of Security, and the Superintendent of the building
within which she resided were present during the conversation
between the plaintiff Donyale Kitchens and the defendant officers,
and heard the plaintiff explicitly refuse the defendant officers
permission to enter into the subject premises.

28.    That subsequently, instead of obtaining a court issued warrant for the
arrest of Tyriek Fortune, or a court issued warrant that would have
legally permitted entry into the subject premises, the defendant
officers induced, coerced, threatened and/or convinced the
employee(s) of the management/security company of the building
within which the subject premises is located, who had a duplicate set
of keys to the subject premises, to open the door of the subject
premises with said duplicate set of keys.

29.    That after the employee(s) of the management/security company of
the building within which the subject premises is located had opened
the door to the subject premises, the defendant officers entered into
the subject premises.

30.    That at the time they entered into the subject premises, the defendant
officers did not have permission from the plaintiff Donyale Kitchens,

or any of the occupants of the subject premises, to enter into the subject premises.

31.     That upon unlawfully and illegally gaining entry to the subject premises as set forth above, the defendant officers entered into the subject premises with guns drawn, and immediately arrested the plaintiff Quinshon Shingles, the plaintiff Donyale Kitchens' son Tyriek Fortune, and Christopher Newman.

32.     That the defendant officers thereafter proceeded to conduct an illegal search of the subject premises.

33.     That the plaintiff Quinshon Shingles remained in handcuffs for approximately one and a half hours while the defendant officers conducted the search of the subject premises.

34.     That the defendant officers did not recover any illegal or unlawful items within the subject premises during their illegal and unlawful search.

35.     That upon learning that the plaintiff Quinshon Shingles was a musician (specifically a "rapper"), the defendant officers asked him if he was "any good". The defendant officers then told the plaintiff Quinshon Shingles to  show them some "spits and bars",  specifically, to perform a rap song, and that if he was "hot" they would let him go.

36.     That the plaintiff Quinshon Shingles was thus compelled to perform a rap song for his freedom.

37.     That apparently satisfied with the plaintiff Quinshon Shingles rap performance, the defendant officers indeed released him and allowed him to leave the subject premises.

38.     That when the plaintiff Donyale Kitchens returned to her apartment, observed that the defendant officers had entered without her permission, and that the occupants were in handcuffs, she was shocked and distressed, and asked the defendant officers how they had gained entry into her premises.

39.     That in response the defendant told the plaintiff Donyale Kitchens not to worry about that.

40.     That when the plaintiff Donyale Kitchens continued to protest the fact that the defendant officers had entered the subject without a warrant, and despite her explicit instructions that they not do so, the defendant officers threatened the plaintiff Donyale Kitchens, and told her that if she did not calm down she would be arrested.

41.     That the December 4, 2011 incident that forms the subject of the instant complaint was not the first time that the defendant officers have supervised and/or gained forcible, unlawful and illegal entry into the premises of citizens.

42.     That in fact, prior to the December 4, 2011 incident, the defendant officers had a habit of forcibly, unlawfully and illegally supervising and gaining entry into the premises of citizens without their consent or permission.

43.     That the defendant Police Officer David Grieco, and upon information and well-founded belief, the other defendant officers, are currently under investigation by the Internal Affairs Bureau ("IAB") of the NYPD for a "range of misconduct", including but not limited to "illegal apartment searches", have "a history of credibility issues", and have been sued at least 14 times since 2009 for allegations "including illegal searches and fabricating evidence"[2].

<u>CAUSE(S) OF ACTION AGAINST EACH DEFENDANT</u>
<u>OFFICER: UNLAWFUL SEARCH UNDER 42 U.S.C § 1983</u>

44.     By this reference, the plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 43 of this complaint as though fully set forth herein.

45.     That on the date of the incident, the defendant officers entered and searched the subject premises without a court issued warrant, and

---

[2] As reported in an article in the New York Daily News newspaper dated July 22, 2013.

without the permission of the plaintiff Donyale Kitchens or any of the occupants of said premises.

46.     As a result of the foregoing, the plaintiff Donyale Kitchens' residence/abode was entered unlawfully, and subjected to illegal and improper searches.

47.     That on the date of the incident, upon their unlawful and illegal entry into the subject premises, the defendant officers subjected the plaintiff Quinshon Shingles to an unlawful and illegal search, without any individualized reasonable suspicion that he was concealing weapons or contraband.

48.     The foregoing unlawful searches violated each plaintiff's constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

49.     As a consequence of the defendant officers' individual and/or collective actions as set forth above, each plaintiff suffered a significant loss of privacy, humiliation, mental anguish, depression, and their constitutional rights were violated.

50.     Each hereby demands compensatory damages and punitive damages in an amount to be determined at trial, against the defendant officers, individually and severally.

## CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C § 1983

51.     By this reference, the plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 50 of this complaint as though fully set forth herein.

52.     The arrest, detention and imprisonment of plaintiff Quinshon Shingles was/were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest, detention or imprisonment.

53.     As a result of plaintiff Quinshon Shingles' false arrest, detention and imprisonment, he has been caused to suffer humiliation, great mental

and physical anguish, embarrassment and scorn among those who
know him, was prevented from attending to his necessary affairs, and
has been otherwise damaged in his character and reputation.

54.    Consequently, plaintiff Quinshon Shingles has been damaged and
hereby demands compensatory and punitive damages in an amount to
be proven at trial against each of the defendants, individually and
severally.

CAUSE OF ACTION: FAILURE TO INTERVENE/INTERCEDE
UNDER 42 U.S.C § 1983

55.    By this reference, the plaintiffs incorporate each and every allegation
and averment set forth in paragraphs 1 through 54 of this complaint
as though fully set forth herein.

56.    Each and every individual defendant had an affirmative duty to
intervene on the plaintiffs behalf to prevent the violation to their
constitutional rights, as more fully set forth above.

57.    The individual defendants failed to intervene on each plaintiff's
behalf to prevent the violation of his/her constitutional rights, despite
having had a realistic and reasonable opportunity to do so.

58.    As a consequence of said defendants' actions, the plaintiff Donyale
Kitchens suffered a significant loss of privacy, humiliation, mental
anguish, depression, and her constitutional rights were violated. The
plaintiff Donyale Kitchens hereby demands compensatory damages
and punitive damages, in the amount of to be determined at trial,
against each of the defendants, individually and severally.

59.    As a consequence of said defendants' actions, the plaintiff Quinshon
Shingles suffered a significant loss of liberty, loss of privacy,
humiliation, mental anguish, depression, and his constitutional rights
were violated. The plaintiff Quinshon Shingles hereby demands
compensatory damages and punitive damages, in the amount of to be
determined at trial, against each of the defendants, individually and
severally.

CAUSE OF ACTION: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

60. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 59 of this complaint as though fully set forth herein.

61. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

62. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the CITY and the NYPD.

63. The aforementioned customs, policies, usages, practices, procedures and rules of the CITY and the NYPD include, but are not limited to the following unconstitutional practices:
Allowing the defendant officers to forcibly, unlawfully and illegally enter into premises of citizens, in order to conduct illegal and unlawful searches therein, or make warrantless arrests.

64. That the defendant CITY failed to supervise the defendant officers, and stop them from committing said illegal and unlawful actions.

65. The aforementioned customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, constituted a deliberate indifference to the safety, well-being and constitutional rights of all citizens, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

(a) The right of the plaintiffs to be secure in their person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.

(b)    The right of the plaintiffs not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to them by the Fifth and Fourteenth Amendments to the Constitution of the United States.

66.    As a result of the actions of the defendants, the plaintiffs were deprived of their rights, privileges, and immunities secured by the United States Constitution, in particular, the Fourth, Fifth, and Fourteenth Amendments, in contravention of 42 USC §1983 and the laws of New York State, without just or legal cause when defendant City, by its employees and/or agents unlawfully entered and searched the plaintiffs person(s) and property, thereby depriving each plaintiff of his/her privacy without due process of law.

67.    The defendant officers were the actual agents of the defendant CITY and the NYPD and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated each plaintiff's constitutional and civil rights, and the City of New York is therefore responsible for their acts, and liable to the plaintiffs for the damages they suffered.

68.    The actual principal/agent relationship between the City and the defendant officers was created by the fact they were employees of defendant CITY and the NYPD, and the CITY and the NYPD had the right to, and it did indeed regulate and control the activities and conduct of the defendant officers.

69.    The defendants' actions were vicious, wicked, cold-hearted, intentional, malicious, unwarranted and in violation of the law.

WHEREFORE, each plaintiff respectfully prays for judgment as follows:

1.    For compensatory damages against each and all defendants in an amount to be proven at trial;

2.    For exemplary and punitive damages against each and all defendants in an amount to be proven at trial;

3.    For costs of suit herein, including the plaintiffs' reasonable attorney's fees; and;

4.    For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, each plaintiff demands a trial by jury.

Dated: Brooklyn, New York
        November 2, 2013

LAW OFFICES OF WALE MOSAKU, P.C.

By:

Wale Mosaku (AM5872)
Attorney(s) for the Plaintiffs
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994